```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**ERIC J. HOUK,**

        Plaintiff,
  vs.                                          Civil Action 2:13-CV-295
                                                      Judge Marbley
                                                      Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

## REPORT AND RECOMMENDATION

**I.    Background**

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 11, the Commissioner's *Memorandum in Opposition*, Doc. No. 21, and plaintiff's *Reply*, Doc No. 22.

Plaintiff Eric J. Houk filed his applications for benefits on June 23, 2009, alleging that he has been disabled since November 30, 2003. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

On October 27, 2011, an administrative hearing was held, at which plaintiff, represented by counsel, testified, as did Aimee Spinelli, who testified as a vocational expert. On December 20, 2011, the administrative law judge issued a written decision concluding that plaintiff was not disabled from November 30, 2003, through the date of the administrative decision. *PAGEID* 53-67. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on February 5, 2013. *PAGEID* 43.

Plaintiff was 43 years of age on the date of the administrative decision. *See PAGEID* 65, 242. He has at least a high school education, is able to communicate in English, and has past relevant work as a clean up worker, framer, pipeliner and maintenance worker. *PAGEID* 65, 247, 249. Plaintiff was last insured for disability insurance benefits on March 31, 2009. *PAGEID* 55. He has not engaged in substantial gainful activity since November 30, 2003, his alleged date of onset of disability. *Id.*

## II. Evidence of Record

<u>Physical Impairments</u>

Plaintiff first saw primary care physician Jeffrey Haggenjos, D.O., in September 2007. *PAGEID* 328. When seen a year later, plaintiff complained of mood swings and back pain. *PAGEID* 327. In May 2009, after seeing plaintiff for an infected wisdom tooth, Dr. Haggenjos opined that plaintiff was "currently unable to work." *PAGEID* 325-26.

Plaintiff underwent treatment at Family Healthcare, Inc., from July 2009 to February 2010. *PAGEID* 491-501. A July 2009 MRI of the lumbar spine showed mild degenerative decreased disc water content at L5-S1 with minimal concentric annulus bulging. *PAGEID* 444. An MRI of the ankle revealed OCD [osteochondral bone defect]/subchondral osteonecrotic lesion in the medial talar dome with extensive surrounding marrow edema. *PAGEID* 443.

State agency physician, Leigh Thomas, M.D., reviewed the record in November 2009, and concluded that plaintiff's physical impairments were not severe. According to Dr. Thomas, plaintiff's statements that ankle/back pain was limiting his ability to work were only partially

credible in light of the essentially normal findings in recent examinations. *PAGEID* 489-90.

Michael Sayegh, M.D., a pain specialist, evaluated and treated plaintiff's complaints of his chronic pain in the lower back and left leg on March 15, 2010. Plaintiff described the pain as throbbing and rated the pain as a 10 on a 0-10 scale. Dr. Sayegh found that plaintiff was mildly anxious and depressed; he noted trigger points and bilateral tenderness in plaintiff's paraspinal muscles, and decreased sensation in the lateral aspect of plaintiff's left lower leg. The following month, plaintiff was dismissed from Dr. Sayegh's practice when his drug test proved positive for Morphine and Oxycodone, which Dr. Sayegh had not prescribed. *PAGEID* 737.

Julie Chen, M.D., another pain specialist, reported to Dr. Haggenjos[1] that plaintiff walked with an unsteady gait and limp, had reduced range of motion in his left ankle, tender points, paraspinal spasm and sacroiliac pain. She diagnosed joint pain in the lower left leg, lumbar/lumbosacral disc degeneration and spondylosis and pain in limb. *PAGEID* 733-34. She recommended a BLE nerve scan, opioid rotation, psychological consultation and possible denervation of the lumbar medial branch, left ankle nerve block and "UDS." *PAGEID* 734.

In March 2011, a Basic Medical Form was completed for the Perry County Department of Job and Family Services indicating that plaintiff is limited in his ability to stand, walk and sit and can lift and carry no more than 20 pounds. *PAGEID* 747. Plaintiff is also "extremely limited" in pushing and pulling, bending, reaching, handling, repetitive foot movements and

---

[1] The date of Dr. Chen's examination of plaintiff is not apparent from the exhibit.

hearing. *Id.* The physician concluded that plaintiff is "unemployable."[2] *PAGEID* 747.

On March 22, 2011, plaintiff presented to the emergency room after falling from a ladder onto gravel-covered ground. *PAGEID* 710-20. Plaintiff reported moderate head and low back pain. *PAGEID* 711. Clinical examination revealed normal range of motion and minimal tenderness. *PAGEID* 712. A CT scan of plaintiff's cervical spine showed degenerative changes at C2-C5 and osteophyte formation at C5. *PAGEID* 717.

Mental Impairments

Charles Loomis, M.Ed., performed a consultative psychological evaluation on behalf of the state agency on September 2, 2009. *PAGEID* 452-57. Plaintiff reported impulsive behavior, agitation, interrupted sleep, loss of libido, feelings of hopelessness, racing thoughts, hyperactivity, and irritability. *PAGEID* 454. Plaintiff also reported occasional alcohol use; he had not used recreational drugs for six months. According to Mr. Loomis, plaintiff displayed an expansive affect and only mild motor manifestations of anxiety. He reported no crying spells or suicidal ideation. He demonstrated average concentration and attention to task. According to Mr. Loomis, plaintiff appeared to be functioning in the low average range of intelligence with a fourth grade reading level. *PAGEID* 455. Mr. Loomis diagnosed a reading disorder, bipolar disorder NOS and a personality disorder with antisocial and borderline features. *PAGEID*

---

[2] Plaintiff contends this opinion was completed by Dr. Haggenjos. *See* Doc. No. 11 at *PAGEID* 761, 766. The administrative law judge noted that the report "is signed by an illegible name." *PAGEID* 64. In a form certifying to the same agency plaintiff's dependency on medication for bipolar disorder, the same physician indicated that plaintiff "is my patient. . . ." *PAGEID* 748.

4

456. He assigned a Global Assessment of Functioning (GAF) score of 50,[3] which is suggestive of severe dysfunction. *Id.* According to Mr. Loomis, plaintiff's mental ability to relate to others was markedly impaired as was his ability to cope with the ordinary stresses and pressures of competitive work. *PAGEID* 456-57.

   Keli A. Yee, Psy.D., performed a consultative psychological evaluation on behalf of the Ohio Department of Job and Family Services on September 30, 2009.  *PAGEID* 460-67. Plaintiff reported a long history anxiety, anger, and problems with ADHD; however, plaintiff was receiving no mental health treatment. *PAGEID* 461.  According to Dr. Yee, plaintiff exhibited restlessness, intermittent eye contact, motor signs of anxiety, pressured speech, average to extensive spontaneity and embellishment, depressed mood, anxious affect, and suicidal ideations. *PAGEID* 464. WRAT-4 testing resulted in fourth to fifth grade academic skills. *PAGEID* 465. Plaintiff's attention and concentration to be decreased.  Dr. Yee diagnosed bipolar disorder, learning disorder, and personality disorder. *PAGEID* 466.  She assigned a GAF score of 62, which is indicative of only mild symptoms. According to Dr. Yee, plaintiff was a poor candidate for return to work due to multiple return-to-work obstacles, such as untreated medical problems, a history of special education classes, and severity of current mood symptoms as well as problems with attention/concentration. "[H]e appears to have a long history of difficulties maintain[ing] gainful employment [which] may suggest he is a better candidate for a longer term

---

[3] The GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

disability type program (social security disability) at this time." *PAGEID* 466.

Dr. Yee also completed a mental functional capacity assessment in which she indicated that plaintiff was markedly limited in his abilities to understand and remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to accept instructions and respond appropriately to criticism from supervisors. *PAGEID* 459. Plaintiff was moderately limited in his abilities to remember locations and work-like procedures; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. *Id.* Dr. Yee concluded that plaintiff was unemployable and would remain so for 12 months or more. *Id.*

State agency psychologist Patricia Semmelman, Ph.D., reviewed the file in October 2009. *PAGEID* 470-88. According to Dr. Semmelman, the record documents a reading disorder, bipolar disorder, anxiety, personality disorder with antisocial and borderline features and alcohol

addiction disorder. *PAGEID* 475-82.  Dr. Semmelman opined that plaintiff was mildly restricted in his activities of daily living; and had moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence and pace. *PAGEID* 484. Dr. Semmelman characterized plaintiff's statements to Mr. Loomis as less than credible in light of the inconsistent information provided by plaintiff. Considering all the medical evidence of record, Dr. Semmelman opined plaintiff was able to perform simple repetitive tasks involving only superficial contact with others and without strict production standards or fast pace. *PAGEID* 473.

Plaintiff was assessed at Tri-County Mental Health on March 17, 2010. *PAGEID* 504-07.  The intake social worker noted that plaintiff was cooperative and preliminarily diagnosed generalized anxiety disorder and social phobia and perhaps ADHD. Although plaintiff reported a previous diagnosis of bipolar disorder, he described depression but not mania. According to the social worker, plaintiff's dependence on alcohol "is evident" and there may also be an issue of drug use.  *PAGEID* 506. Counseling combined with psychiatry was recommended. *Id.*

Plaintiff began mental health treatment at Six County, Inc., in November 2010.  *PAGEID* 526-32. According to Kevin Smyth, LPCC, plaintiff was disheveled, had a demanding demeanor, intense eye contact, was agitated, had rapid speech, grandiose delusions, racing thoughts, irritable mood, inappropriate affect, and poor insight and judgment. *PAGEID* 531. Mr. Smyth noted issues with substance use/addiction.  PAGE 529. Mr. Smyth diagnosed bipolar disorder, most recent episode mixed, severe without psychotic features; major depressive disorder, recurrent, severe, without psychotic features; and bipolar I disorder, single manic episode. He

assigned a GAF score of 59, which is indicative of moderate symptoms. *PAGEID* 530.

In March, 2011, Mr. Smyth found plaintiff to be extremely restless, fidgety, and uncomfortable in public. Plaintiff was described as the "squirmiest client the counselor had ever seen." *PAGEID* 525.

Wheaton B. Wood, M.D., a psychiatrist at Six County, managed plaintiff's medications. *PAGEID* 754-56. On May 2, 2011, plaintiff reported a history of alcohol and cocaine use and occasional use of marijuana. Dr. Wood characterized plaintiff as irritable with decreased attention and flight of thought. *PAGEID* 755. He questioned whether treatment could help plaintiff. *Id.* Dr. Wood diagnosed ADHD, bipolar disorder, antisocial personality disorder, and polysubstance abuse. *Id.* In August 2011, Dr. Wood commented that plaintiff was able to focus more and was sleeping better. Plaintiff was less agitated and his mood was euthymic. *PAGEID* 752-53.

**III. Administrative Hearing and Decision**

Plaintiff testified at the administrative hearing that the "prime area" affecting his ability to work is his mental issues. *PAGEID* 81. He also has problems with his left ankle, which slows his activities. *PAGEID* 82-3. He estimated that he could walk ½ hour before his ankle would bother him. *Id*. He could sit for only one-half hour at a time. *PAGEID* 84. He can lift 10 to 20 pounds.  *PAGEID* 85. He can drive a car, but he gets aggravated with other drivers. *PAGEID* 88-89. He has difficulty with reading and spelling, but can perform basic math. *PAGEID* 90. He watches television, but cannot concentrate on what he watches.  *PAGEID* 105.  He suffers from panic attacks, depression, and paranoia. *PAGEID* 109.

The administrative law judge found that plaintiff's severe impairments consist of major depressive disorder, bipolar disorder, attention deficit hyperactivity disorder (ADHD), reading disorder, generalized anxiety disorder, social phobia, antisocial personality disorder, polysubstance dependence in early remission, OCD lesion of the talus of the medial aspect of the left lower extremity, lumbar strain, cervical degenerative disc disease, and deafness in his left ear. *PAGEID* 56. However, the administrative law judge also found that plaintiff's severe impairments neither meet nor equal a listed impairment and leave plaintiff with the following residual functional capacity ("RFC"):

> . . . [M]edium work . . . except he is unable to climb ladders, ropes or scaffolds.  He can occasionally crouch, stop, crawl, and climb ramps and stairs.  Additionally, he can frequently push, pull, and operate foot pedals with his left lower extremity.  The claimant can frequently push, pull, and operate levers with the left upper extremity.  He must avoid exposure to hazards such as working around dangerous moving machinery and working at unprotected heights.  He also must work in an environment that does not require fine hearing capabilities.  Moreover, the claimant is limited to performing simple, routine, three-to four-step tasks with no fast-paced production demands or strict time quotas.  He can interact superficially with supervisors and coworkers, but he cannot interact with the general public.

*PAGEID* 58-59.

In determining plaintiff's RFC, the administrative law judge gave no weight to either the opinion of Dr. Thomas, the state agency physician who concluded that plaintiff suffers no severe physical impairment, or the August 2009 and March 2011 opinions of Dr. Haggenjos, plaintiff's treating physician who opined that plaintiff is disabled. *PAGEID* 63-64. The administrative law judge gave great weight to the psychological assessment of Dr. Semmelman, the state agency reviewing psychologist, little weight to the psychological assessment of Mr. Loomis, the consultative examiner,

9

and little weight to the psychological assessment of Dr. Yee, another consultative examiner. *PAGEID* 64.

Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy, including such jobs as a dishwasher, janitor and warehouse worker. *PAGEID* 65-66. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from November 30, 2006, through the date of the administrative law judge's decision. *PAGEID* 91-92.

**IV. Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must

be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to examine Dr. Haggenjos' treating source opinion for controlling weight and failed to provide good reason for assigning that opinion little weight.  In particular, plaintiff complains that the administrative law judge failed to even recognize that the Department of Job and Family Services physical functional capacity assessment was Dr. Haggenjos' assessment. Plaintiff also argues that the administrative law judge should have given greater weight to the opinions of Dr. Yee and Mr. Loomis and erroneously gave great weight to Dr. Semmelman's non-examining opinion of plaintiff's mental functioning. Because the Court finds that the administrative law judge failed to recognize or evaluate Dr. Haggenjos' March 2011 medical opinion as that of a treating physician, the Court concludes that the action must be remanded to the Commissioner for further proceedings.

As noted *supra*, the record reflects a March 2011 assessment of plaintiff's impairments.  *PAGEID* 747, 748.  It is apparent to this Court that this assessment was that of plaintiff's treating physician, Dr. Haggenjos.  The opinions of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§404.1527(d)(2), 416.927(d)(2).  If the administrative law judge finds

11

that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §§404.1527(d)(2),(4); 416.927(d)(2),(4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight.

*Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007).

Because the administrative law judge did not recognize Dr. Haggenjos' March 2011 assessment as the opinion of a treating physician, the administrative law judge did not evaluate that opinion by reference to the standards required by the Commissioner's regulations. Ordinarily, this failure would require remand to the Commissioner for a proper evaluation of the opinion. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007); *Wilson*, 378 F.3d at 546.

The Commissioner contends that remand is unwarranted in this case, even assuming that the March 2011 assessment is that of Dr. Haggenjos, because any failure in this regard amounted to no more than harmless error. The United States Court of Appeals for the Sixth Circuit recognized in

12

*Wilson* that reversal may not be required if the failure to explicitly comply with the regulations has been only *de minimis*, or harmless error. *Wilson,* 378 F.3d at 547. The Court cautioned, however, that the inquiry cannot mean merely that the plaintiff "'had little chance of success on the merits anyway.'" *Id.,* at 546 (quoting *Mazaleski v. Trubell,* 562 F.2d 701, 719 n.31 (D.C. Cir. 1977). Rather, the Sixth Circuit recognized three categories of cases in which the failure to strictly follow the requirements of the regulation may not warrant reversal: (1) "If a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "If the Commissioner adopts the opinion of the treating source and its findings consistent with the opinion"; or (3) "Where the Commissioner has met the goal of §404.1527(d)(2) -- the provision of the procedural safeguard of reasons -- even though she has not complied with the [express] terms of the regulation." *Id.* at 547.

Dr. Haggenjos' March 2011 report included specific diagnoses, including past concussive syndrome, cervical, thoracic and lumbar sprain, high blood pressure, hearing loss, dental problems, COPD, bipolar disorder and agoraphobia. *PAGEID* 746. Dr. Haggenjos indicated that plaintiff's ability to sit, stand and walk are affected by his impairments, that he is extremely limited in his ability to push, pull, bend, reach, handle, hear and engage in repetitive foot movements, and that he can lift and carry no more than 20 pounds. *PAGEID* 747. This assessment is not "so patently deficient that the Commissioner could not possibly credit it," nor can it be said that the administrative law judge's findings were "consistent with the opinion." *See Wilson* at 547.

Moreover, the Court concludes that the administrative law judge's evaluation of this assessment did not effectively meet the goal of the

13

regulations. In rejecting the March 2011 assessment, the administrative law judge stated:

> The undersigned finds that this opinion is far too restrictive and not supported by the medical evidence that includes numerous normal physical examination findings. It further invades the providence [sic] of the Commissioner by opining that the claimant is "unemployable."

*PAGEID* 64. This conclusory evaluation[2] fails to provide good reasons for discounting this treating physician's assessment; it simply cannot be said that this reasoning is sufficiently specific to demonstrate the weight given to this treating provider's opinion and the reasons for that weight. *See Bass, supra*, 499 F.3d at 511. In short, the Court concludes that the administrative law judge's failure to properly evaluate Dr. Haggenjos' March 2011 opinion was not merely harmless error.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be remanded to the Commissioner for further proceedings.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of

---

[2] The Court recognizes that the ultimate determination of disability is reserved to the Commissioner. *See* 20 U.S.C. §§ 404.1527(e); 416.927(e).

the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: May 8, 2014                                  *s/Norah McCann King*
                                                   Norah McCann King
                                                   United States Magistrate Judge